**STATE v. PENDLETON**

[112 N.C. App. 171 (1993)]

---

STATE OF NORTH CAROLINA v. ALAN HOWARD PENDLETON

No. 9211SC880

(Filed 5 October 1993)

**Constitutional Law § 121 (NCI4th)— Campbell University employees—commissioning as policemen—enabling statute not unconstitutional**

N.C.G.S. Chapter 74A authorizing the Attorney General to commission as policemen the employees of certain public and private institutions or companies does not violate the Establishment Clause of the First Amendment because it per-

STATE v. PENDLETON

[112 N.C. App. 171 (1993)]

mits employees of a religious institution, Campbell University, to be commissioned as policemen and thereby exercise the authority of the State, since Chapter 74A has a secular legislative purpose; its primary effect is neither to advance nor to inhibit religion; it does not foster an excessive entanglement with religion; and it is not an unconstitutional delegation of the State's law enforcement authority. Therefore, defendant's arrest for DWI by a Campbell University police officer was not unconstitutional. N.C.G.S. § 74A-1.

**Am Jur 2d, Constitutional Law §§ 466-470, 477.**

Appeal by the State from order entered 29 April 1992 by Judge Steve Allen in Harnett County Superior Court. Heard in the Court of Appeals 14 June 1993.

The following facts pertinent to this appeal are not disputed by the parties. Campbell University, located in Buies Creek, North Carolina, is affiliated with the Baptist State Convention of North Carolina. Campbell University operates a police force consisting of a captain and eight full-time officers. Campbell University's police officers were commissioned as police officers by the Attorney General under the provisions of the North Carolina General Statutes, Chapter 74A. Chapter 74A authorizes the Attorney General to commission as policemen the employees of certain public and private institutions or companies.

At the times relevant to this appeal, Ricky Symmonds was employed as a deputy sheriff by the Harnett County Sheriff's Department. While so employed, Symmonds also acted as the chief of Campbell University's police force. Reed Jones was employed as a police officer by the University. Defendant, Alan Howard Pendleton, was an undergraduate student at the University and resided in a campus dormitory.

On 12 April 1991, at 1:05 a.m., Officer Jones observed defendant operating an automobile on a public highway near the University. Jones followed defendant as defendant traveled toward the University campus. Defendant crossed the center line of the roadway several times and weaved back and forth within his lane of travel. Jones stopped defendant and arrested him for driving while impaired. On 26 June 1991, defendant was convicted in the Harnett County District Court of driving while impaired. He appealed to the Superior Court.

On 3 September 1991, defendant filed in the Superior Court a motion to dismiss his conviction on the ground that Chapter 74A violates the First Amendment of the Constitution of the United States, and Article I, Sections 13 and 19 of the North Carolina Constitution. Specifically, defendant alleged that Chapter 74A is unconstitutional because it permits employees of a religious institution to be commissioned as policemen and thereby exercise the authority of the State. Defendant further alleged that by granting police powers to a private, church-owned university, Chapter 74A "enables state authority to intervene in the church agency and visa [sic] versa, thus violating the separation of church and state."

On 29 April 1992, the trial court entered an order dismissing defendant's conviction, concluding that Chapter 74A is unconstitutional on the grounds that it creates an excessive entanglement of the State and the church, and it "constitutes an impermissible delegation of authority to a religious institution as it is an establishment of religion." The trial court further concluded that defendant's arrest was unconstitutional in that it was affected by an unconstitutional exercise of the State's police power. Based on these conclusions, the trial court allowed defendant's motion to dismiss his conviction. The State appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Valerie B. Spalding, for the State.*

*Stewart and Hayes, P.A., by Gerald W. Hayes, Jr., and Lytch, Tart and Fusco, P.A., by Phillip A. Fusco, for defendant-appellee.*

*Robert A. Buzzard for Campbell University, amicus curiae.*

MARTIN, Judge.

This case brings into question the validity of Chapter 74A under both the State and Federal Constitutions. For the reasons set forth herein, we find that Chapter 74A is constitutional, both on its face and as applied to defendant.

Article I, Section 13 of the North Carolina Constitution guarantees to all persons the right to worship according to the dictates of their own consciences and that the State shall not, in any case whatever, control or interfere with the rights of conscience. Article I, Section 19 of the North Carolina Constitution prohibits discrimination by the State against any person because of that person's religion. The First Amendment to the Constitution

of the United States provides that "Congress shall make no law respecting an establishment of religion . . . ."

These constitutional provisions are said to guarantee "freedom of religious profession and worship, 'as well as an equally firmly established separation of church and state.' " *Church v. State*, 299 N.C. 399, 406, 263 S.E.2d 726, 730 (1980), *quoting Braswell v. Purser*, 282 N.C. 388, 393, 193 S.E.2d 90, 93 (1972). A legislative enactment violates these constitutional provisions if such enactment, "whether in purpose, substantive effect, or administrative procedure, tends to control or interfere with religious affairs, or discriminate along religious lines, or to constitute a law respecting the establishment of religion." *Church*, 299 N.C. at 406, 263 S.E.2d at 730. What these constitutional mandates demand is secular neutrality toward religion. *Id.*

Although our analysis of the constitutionality of Chapter 74A will focus primarily on the United States Supreme Court's interpretations of the Establishment Clause, our decision is nonetheless grounded on the requirements of the North Carolina Constitution. As our Supreme Court has said, "although the differences in terminology in the relevant North Carolina and federal constitutional provisions, may support in some cases differences in scope of their application, . . . the neutrality demanded by the First Amendment is also compelled by the conjunction of Sections 13 and 19 of Article I." *Church*, 299 N.C. at 406, n.1, 263 S.E.2d at 730, n.1.

The United States Supreme Court, in interpreting the Establishment Clause of the United States Constitution, has developed a three-pronged analytical scheme for determining the facial constitutionality of legislative enactments under the Establishment Clause. *Lemon v. Kurtzman*, 403 U.S. 602, 29 L.Ed.2d 745 (1971). This analytical scheme, known as the *Lemon* test, is stated as follows:

> First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion . . . finally, the statute must not foster 'an excessive government entanglement with religion.' (Citations omitted.)

*Id.* at 612-13, 29 L.Ed.2d at 755.

We now apply the *Lemon* test to determine whether Chapter 74A is constitutional on its face. G.S. § 74A-1 provides in pertinent part:

Any educational institution or hospital, whether State or private, or any other State institution, public utility company, construction company, manufacturing company, auction company, incorporated security patrols or corporations engaged in providing security or protection services for persons or property, may apply to the Attorney General to commission such persons as the institution, corporation or company may designate to act as policemen for it. The Attorney General upon such application may appoint such persons or so many of them as he may deem proper to be such policemen, and shall issue to the persons so appointed a commission to act as such policemen. Nothing contained in the provisions of this section shall have the effect to relieve any such company or corporation from any civil liability for acts of such policemen, in exercising or attempting to exercise the powers conferred by this Chapter.

G.S. § 74A-2 provides that policemen commissioned under the Chapter shall possess all the powers of municipal and county police to make arrests for felonies and misdemeanors and to charge for infractions on property owned or controlled by their employers. N.C. Gen. Stat. § 74A-2(b). The authority of policemen who are employed by any college or university extends to the public roads passing through or immediately adjoining the property of the employer. N.C. Gen. Stat. § 74A-2(e)(1). In addition, the authority of such college or university policemen may be extended by agreement between the employer institution's board of trustees and the governing board of the municipality or county in which the institution is located. N.C. Gen. Stat. § 74A-2(e)(2) and (3).

Under the *Lemon* test, we must first determine whether the Chapter has a secular legislative purpose. Our review of Chapter 74A reveals nothing that evinces an intent to aid, promote, restrict, hinder, or otherwise affect any religion or any religious organization. Likewise, the Chapter is devoid of any provision which could be deemed to manifest a preference for one religion over any other religion. The ability of an institution or company to have its employees commissioned as policemen is not dependent upon its status as a secular or sectarian institution. Clearly, Chapter 74A reveals a valid secular purpose; that of extending to institutions, companies, hospitals and the like, both private and public, the police power of the State for the purpose of protecting persons and prop-

erty located on their premises. Thus, we conclude that Chapter 74A has a secular legislative purpose.

Second, we must determine whether the Chapter's *primary* effect is to advance or inhibit religion. The Establishment Clause is violated if a State enacts laws which "aid one religion, aid all religions, or prefer one religion over another." However, legislation which provides some incidental or remote advantage to a religious organization does not run afoul of the Establishment Clause. *Bowen v. Kendrick*, 487 U.S. 589, 101 L.Ed.2d 520 (1988); *Mueller v. Allen*, 463 U.S. 388, 77 L.Ed.2d 721 (1983). Where the class benefitted by the legislative enactment is large, the more likely it will be that "the advantages to religious institutions will indeed be incidental to secular ends and effects." *Public Funds for Public Schools of N.J. v. Byrne*, 590 F.2d 514, 518 (3d Cir. 1979). Defendant argues that the effect of the Chapter, as applied in this case, is to advance the religious principles of Campbell University. We disagree.

Defendant bases his contention on evidence that the University prohibits the consumption of alcoholic beverages on University property and that its rules also restrict opposite sex visitation in the University's campus dormitories. Officer Jones testified that he does not enforce University regulations, rather he reports such violations to the University's dean. In addition, Officer Jones testified that if he was notified that alcoholic beverages were being consumed in a campus dormitory, he would record the names of the persons involved and hold the alcoholic beverages for University authorities. These actions would be taken even if the individuals involved were not violating the law of this State.

Defendant contends that when Campbell policemen enforce the University's rules of conduct, they are exercising the authority granted to them by the State under Chapter 74A, thereby creating the appearance of state endorsement of the University's religious beliefs and practices. This apparent state endorsement, argues defendant, confers a benefit on the University in violation of the Establishment Clause. We disagree.

As previously noted, Chapter 74A makes no distinction between religious and secular institutions. The Chapter applies to hospitals and educational institutions, whether state or private, public utilities, construction companies, manufacturing companies, auction companies and private security corporations. We believe

STATE v. PENDLETON

[112 N.C. App. 171 (1993)]

that the Chapter's breadth of application is a strong indication that its primary effects are secular. *Public Funds for Public Schools of N.J. v. Byrne*, 590 F.2d 514.

In addition, the *primary* benefits which flow from a grant of authority under Chapter 74A are strictly secular in nature. Public and private organizations are benefitted by having increased authority to protect persons and property located on their premises and the State is benefitted by the increased law enforcement which is provided without expense to the State. The State certainly has an interest in the enforcement of its laws and the protection of its citizens and their property.

Assuming *arguendo* that Chapter 74A somehow aids Campbell University in its alleged efforts to promote certain religious practices and beliefs, the aid received is clearly indirect, insubstantial, and incidental. We find nothing in Chapter 74A which indicates anything other than an intent to pursue a course of complete neutrality toward religion. *Wallace v. Jaffree*, 472 U.S. 38, 86 L.Ed.2d 29 (1985). That Campbell University may incidentally benefit by having its employees commissioned under Chapter 74A, does not render the Chapter unconstitutional.

There is nothing in the First Amendment which prevents religious institutions from participating in benefits which are equally available to secular institutions. *Bowen v. Kendrick*, 487 U.S. 589, 101 L.Ed.2d 520 (1988); *Bradfield v. Roberts*, 175 U.S. 291, 44 L.Ed. 168 (1899). To differentiate between those institutions which are religiously affiliated and those which are not so affiliated would be to favor the secular over the religious. Article I, Section 19 of the North Carolina Constitution forbids "discrimination by the State because of . . . religion . . . ." For the foregoing reasons, we hold that the *primary* effect of Chapter 74A is neither to advance nor inhibit religion.

Finally, we must determine whether Chapter 74A fosters an excessive entanglement between the State and religion. "Excessive entanglement" cases typically arise when the government authorizes financial grants to a program whose participants include institutions which are religiously affiliated. *Bowen*, 487 U.S. at 616, 101 L.Ed.2d at 545. Financial grants will be found to foster "excessive entanglement" if they necessitate government oversight of the religious institution's affairs in order to insure that the aid flowing

to the institution is utilized for secular purposes and not for the advancement of religion. *Id.* at 615, 101 L.Ed.2d at 544.

This case simply does not involve a flow of taxpayer monies to a religious institution and therefore does not present the need for government oversight which would create the possibility of "excessive entanglement." The "aid" provided to Campbell University by Chapter 74A, the delegation of law enforcement authority, is distinctly different in nature from the provision of financial aid to a religiously affiliated institution. Whereas financial aid may be utilized in a manner which would violate the Establishment Clause, the exercise of law enforcement authority is strictly a secular function.

Moreover, there is nothing in Chapter 74A which would otherwise indicate a need for government supervision of Campbell University or its police officers. If Chapter 74A can be said to create some interrelationship between the State and the University, it certainly does not amount to an intrusion by the State into the University's internal affairs. *See Aguilar v. Felton*, 473 U.S. 402, 409-10, 87 L.Ed.2d 290, 297-98 (1985).

Defendant contends that there is an "excessive entanglement" in this case because Campbell police officers are employed to perform two roles for the University. One role performed by Campbell policemen is enforcement of the laws of the State. The other role, according to defendant, is enforcement of the student code of conduct. Defendant argues that allowing Campbell police officers to enforce the student code of conduct while cloaked with the authority of the State fosters "excessive entanglement." We disagree.

"Excessive entanglement" is the phrase which has been used to describe government involvement in the affairs of the church and, vice versa. A legislative enactment is said to foster an "excessive entanglement" between church and state when the enactment necessitates "sustained and detailed administrative relationships" between the church and state. *Walz v. Tax Commission*, 397 U.S. 664, 675, 25 L.Ed.2d 697, 705 (1970).

In this case, policemen commissioned under Chapter 74A are not employees of the State and there is nothing in the Chapter which requires or necessitates that they be supervised by the State. Rather, the supervision of the policemen is the responsibility of their employers and their employers remain civilly liable for acts

committed by the policemen in the exercise or attempted exercise of their authority. N.C. Gen. Stat. § 74A-1. Simply stated, Chapter 74A does not by its terms require, or by its effects necessitate, government involvement in the affairs of the University. Thus, even if the nature of an officer's employment by Campbell University is twofold, the State has no involvement in the University's affairs which could be deemed to constitute an "excessive entanglement."

Defendant also contends that there is an "excessive entanglement" between the State and Campbell University because Ricky Symmonds, who is employed and paid by the Harnett County Sheriff's Department, acts as the chief of the Campbell University police force. We disagree.

G.S. § 74A-4 specifically provides that the compensation of policemen commissioned under the Chapter shall be paid by their employers. Adherence to the dictates of the Chapter insures that university and college police are independent from state and local government. While the agreement between Campbell University and Harnett County regarding Deputy Symmonds' compensation may be in violation of G.S. § 74A-4, the question of the legality of that agreement is not before us and it has no bearing on our inquiry regarding the constitutionality of Chapter 74A. For the reasons set forth above, we hold that Chapter 74A does not create an excessive entanglement between church and state.

In the alternative, defendant argues that the delegation of a governmental function to Campbell University is itself violative of the Establishment Clause. In support of this contention, defendant cites *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 74 L.Ed.2d 297 (1982). *Larkin* involved a Massachusetts statute which vested "in the governing bodies of churches and schools the power to effectively veto applications for liquor licenses within a five hundred foot radius of the church or school[.]" *Larkin*, 459 U.S. at 117, 74 L.Ed.2d at 301. The *Larkin* court found that the statute at issue was violative of the Establishment Clause. The facts of *Larkin*, however, are distinguishable from the facts in this case.

In *Larkin*, the institutions that were vested with governmental powers were churches. Although Campbell University is church affiliated, it is a university, not a church. Moreover, Chapter 74A grants law enforcement authority to individuals employed by cer-

tain institutions; the Chapter does not grant law enforcement authority to the institution itself.

Under the statute in *Larkin*, the churches' power to restrict the issuance of liquor licenses was standardless. *Id.* at 125, 74 L.Ed.2d at 306. In rendering their decisions, the churches were not required to state the reasons for their decisions, or even to make any findings in support thereof. *Id.* Their power was absolute and was no substitute for the reasoned decision making of a body guided by legal standards. *Id.* at 127, 74 L.Ed.2d at 307.

Contrary to the authority of the churches in *Larkin*, the authority of officers commissioned under Chapter 74A is guided by the law of this State to the same extent and degree as all other municipal and county police. In addition, the authority delegated to the churches in *Larkin* was the authority to make legislative or adjudicatory decisions. The authority delegated under Chapter 74A involves no decision making authority. Based on the foregoing factual differences between this case and *Larkin*, we hold that the Chapter's delegation of law enforcement authority does not violate the Establishment Clause.

In summary, we hold that Chapter 74A has a secular legislative purpose, its primary effect is neither to advance nor to inhibit religion, it does not foster an excessive entanglement with religion and it is not an unconstitutional delegation of the State's law enforcement authority. For the reasons set forth herein, the order of the trial court dismissing defendant's conviction is reversed.

Reversed.

Judges ARNOLD and COZORT concur.