STATE OF NORTH CAROLINA v. ALAN HOWARD PENDLETON

No. 478A93

(Filed 30 December 1994)

**Constitutional Law § 119 (NCI4th)— Campbell University police force—delegation of police power to religious institution—unconstitutional**

The superior court did not err in holding that former N.C.G.S. Chapter 74A was unconstitutional as applied to delegate police powers to Campbell University where an officer on the campus police force arrested a student for driving while impaired on a

public highway near the campus. Under *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, the United States Supreme Court established a clear rule which the North Carolina Supreme Court is required to follow in cases arising under the Establishment Clause: A state may not delegate an important discretionary governmental power to a religious institution or share such power with a religious institution. All parties to this appeal concede that the State of North Carolina delegated its police power to Campbell University. Under *Foley v. Connelie*, 435 U.S. 291, police power is an important discretionary governmental power and, in light of findings of the superior court which were not excepted to and which are therefore binding, and which were based in part on uncontroverted evidence including Campbell University's own bulletin and its definition of its mission, the superior court did not err by concluding that Campbell University is a religious institution.

**Am Jur 2d, Constitutional Law §§ 466 et seq.**

Justice WHICHARD dissenting.

Justices MEYER and WEBB join in this dissenting opinion.

Appeal of right pursuant to N.C.G.S. § 7A-30 of a decision of the Court of Appeals, 112 N.C. App. 171, 435 S.E.2d 100 (1993), reversing an order entered by Allen (W. Steven, Sr.), J., on 29 April 1992 in Superior Court, Harnett County. Heard in the Supreme Court on 13 September 1994.

*Michael F. Easley, Attorney General, by Valerie B. Spalding, Assistant Attorney General, for the State.*

*Patterson, Harkavy and Lawrence, by Martha A. Geer; Stewart and Hayes, by Gerald W. Hayes, Jr.; and Lytch, Tart and Fusco, P.A., by Phillip A. Fusco, for the defendant-appellant.*

*Robert A. Buzzard for Campbell University, amicus curiae.*

*Patterson, Harkavy and Lawrence by Burton Craige; and Daniel H. Pollitt; for American Civil Liberties Union of North Carolina Legal Foundation, amicus curiae.*

MITCHELL, Justice.

On 12 April 1991, Officer Reed Jones of the campus police force of Campbell University observed the defendant, Alan Howard

Pendleton, operating an automobile on a public highway near that university's campus in Buies Creek, North Carolina. Jones followed the defendant as the defendant traveled toward the campus. The defendant crossed the center line of the roadway several times and weaved back and forth within his lane of travel. Jones stopped the defendant and arrested him for driving while impaired in violation of N.C.G.S. § 20-138.1. On 26 June 1991, the defendant was convicted in District Court, Harnett County, of driving while impaired. He appealed to the Superior Court for trial *de novo*.

On 3 September 1991, the defendant filed a motion in the Superior Court, Harnett County, seeking dismissal of the charge against him on the ground that Chapter 74A of the General Statutes of North Carolina violated the First Amendment to the Constitution of the United States, and Article I, Sections 13 and 19, of the Constitution of North Carolina. Specifically, the defendant alleged that Chapter 74A was unconstitutional because it permitted employees of a religious institution to be commissioned and function as police officers and thereby authorized a religious institution to exercise the police power of the State. The defendant further alleged that by permitting the State—through its Attorney General—to delegate its police powers to a private, church-owned religious institution, Chapter 74A violated the constitutional separation of church and state because such a delegation "enables state authority to intervene in the church agency."

A hearing was held on the defendant's motion, during which uncontroverted evidence was introduced tending to show, *inter alia*, that Campbell University is closely affiliated with the Baptist State Convention of North Carolina. Campbell University operates a police force consisting of a captain and eight full-time officers. All of the officers of that police force were commissioned as police officers by the Attorney General of North Carolina acting under the provisions of Chapter 74A authorizing him to commission as policemen the employees of certain public and private institutions or companies. At the times relevant to this appeal, Ricky Symmonds was employed as a deputy sheriff by the Harnett County Sheriff's Department. While so employed, Symmonds also acted as the chief of Campbell University's campus police force. Officer Jones, the officer who arrested and charged the defendant Pendleton, was employed as a police officer by Campbell University. The defendant was an undergraduate student at Campbell University and resided in a campus dormitory.

STATE v. PENDLETON

[339 N.C. 379 (1994)]

On 29 April 1992, Judge Allen entered an order in the Superior Court, Harnett County, concluding that Chapter 74A was unconstitutional because it created an excessive entanglement of state and church, constituted an impermissible delegation of authority to a religious institution and was an establishment of religion. The order further concluded that the defendant's arrest and the evidence obtained as a result had been invalid, since they had resulted from an unconstitutional delegation and exercise of the State's police power. Based on these conclusions, the order of the Superior Court allowed the defendant's motion to dismiss. The State appealed to the Court of Appeals.

At all times pertinent to this appeal, former Chapter 74A provided[1], *inter alia:*

> Any educational institution . . . whether State or private, . . . may apply to the Attorney General to commission such persons as the institution . . . may designate to act as policemen for it. The Attorney General upon such application may appoint such persons or so many of them as he may deem proper to be such policemen, and shall issue to the persons so appointed a commission to act as such policemen.

N.C.G.S. § 74A-1 (1989) (repealed by Session Laws 1991 (Regular Session, 1992), ch. 1043, § 8 (effective 25 July 1992)). Further, as the Court of Appeals stated in its opinion in the present case, former Chapter 74A also provided

> that policemen commissioned under the Chapter shall possess all the powers of municipal and county police to make arrests for felonies and misdemeanors and to charge for infractions on property owned or controlled by their employers. N.C. Gen. Stat. § 74A-2(b). The authority of policemen who are employed by any college or university extends to the public roads passing through or immediately adjoining the property of the employer. N.C. Gen. Stat. § 74A-2(e)(1). In addition, the authority of such college or

1. After the order of the Superior Court but before this case reached the Court of Appeals, Chapter 74A was repealed in its entirety. N.C. Sess. Laws 1991 (Regular Session, 1992), ch. 1043, § 8 (effective 25 July 1992). Provisions pertaining to the subject matter formerly controlled by Chapter 74A are now found in Chapter 74E of the North Carolina General Statutes. At all times pertinent to this appeal, however, the authority of the university and of the officer who arrested and charged the defendant rested upon former Chapter 74A, exclusively. Therefore, this opinion is directed solely to the constitutionality of those former statutory provisions as they apply to the facts of this particular case.

university policemen may be extended by agreement between the employer institution's board of trustees and the governing board of the municipality or county in which the institution is located. N.C. Gen. Stat. § 74A-2(e)(2) and (3).

*State v. Pendleton*, 112 N.C. App. 171, 175, 435 S.E.2d 100, 103 (1993). Applying the test set forth in *Lemon v. Kurtzman*, 403 U.S. 602, 29 L. Ed. 2d 745 (1971), the Court of Appeals concluded:

Chapter 74A has a secular legislative purpose, its primary effect is neither to advance nor to inhibit religion, it does not foster an excessive entanglement with religion and it is not an unconstitutional delegation of the State's law enforcement authority.

*Pendleton*, 112 N.C. App. at 180, 435 S.E.2d at 106. The Court of Appeals held that Chapter 74A was constitutional, both on its face and as applied.

Based on the uncontroverted evidence comprising the record on appeal before us, we conclude that the Superior Court did not err in holding that former Chapter 74A was unconstitutional as applied in the present case. Accordingly, we reverse the decision of the Court of Appeals and reinstate the order of the Superior Court, Harnett County, allowing the defendant's motion to dismiss.

The defendant has conceded on appeal before this Court that former Chapter 74 was facially constitutional. The defendant has argued here that former Chapter 74A, which provided *inter alia* for the delegation of the State's police power to educational institutions, was unconstitutional as applied to Campbell University because it violated the First Amendment to the Constitution of the United States and Article I, Sections 13 and 19 of the Constitution of North Carolina.

Ordinarily, when a statute is challenged on constitutional grounds, the best course is to evaluate any challenge made under the state constitution before turning to a review of the statute under the Constitution of the United States. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 294-95, 71 L. Ed. 2d 152, 163 (1982). *See Reed v. Madison*, 213 N.C. 145, 147, 195 S.E. 620, 622 (1938). However, where a law has been applied in such a manner as to be a manifest violation of the federal constitution as interpreted by the Supreme Court of the United States, state constitutional review may be unnecessary and dilatory. Based on the particular evidence presented in this case, we conclude that, as applied, former Chapter 74A violated

the First and Fourteenth Amendments to the Constitution of the United States. We base our decision in this case solely on federal constitutional grounds. We neither consider nor decide any state constitutional issues.

In cases applying the Establishment Clause of the First Amendment, the Supreme Court of the United States has developed a three-pronged analytical scheme for determining the constitutionality of legislative enactments. *Lemon v. Kurtzman*, 403 U.S. 602, 29 L. Ed. 2d 745. Under this analytical scheme, known as the Lemon test, to survive constitutional review:

> First, the statute must have a secular purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion . . . ; finally, the statute must not foster "an excessive government entanglement with religion."

*Id.* at 612-13, 29 L. Ed. 2d at 755 (citations omitted). If a statute, as applied, violates any one prong of the Lemon test, it is unconstitutional. *Edwards v. Aguillard*, 482 U.S. 578, 583, 96 L. Ed. 2d 510, 518-19 (1987).

We turn our analysis to the third prong of the Lemon test and consider whether, based on the evidence presented in this case, the delegation of the State's police power to Campbell University creates or fosters an excessive government entanglement with religion. This entanglement prong of the Lemon test has been the subject of much debate. It has been criticized as being "blurred, indistinct, and variable" as well as "insolubly paradoxical." *Roemer v. Maryland Public Works Bd.*, 426 U.S. 736, 768-69, 49 L. Ed. 2d 179, 200 (1976) (White, J., concurring, joined by Rehnquist, J. (now C.J.)). It has been said, for example, that the entanglement prong is paradoxical because it requires that aid to parochial schools be closely watched, yet such close supervision itself creates excessive entanglement. *Wallace v. Jaffree*, 472 U.S. 38, 109, 86 L. Ed. 2d 29, 77 (1985) (Rehnquist, J., dissenting). "The required inquiry into 'entanglement' has been modified and questioned," and the entire Lemon test has been said to have "proven problematic." *Wallace*, 472 U.S. at 68, 86 L. Ed. 2d at 51 (O'Connor, J., concurring).

The Supreme Court's conspicuous nonreliance on *Lemon* in *Lee v. Weisman*, —— U.S. ——, 120 L. Ed. 2d 467 (1992), led some, includ-

STATE v. PENDLETON

[339 N.C. 379 (1994)]

ing Mr. Justice Scalia, to believe that the test had been abandoned.[2] However, the Court resuscitated the oft-criticized Lemon test in *Lamb's Chapel v. Center Moriches*, —— U.S. ——, 124 L. Ed. 2d 352 (1993). Employing the Lemon test, Justice White wrote for a clear majority of the Court in *Lamb's Chapel* that "there is a proper way to enter an established decision and Lemon, however frightening it might be to some, has not been overruled." *Lamb's Chapel*, —— U.S. at —— n.7, 124 L. Ed. 2d at 363 n.7. Consequently, the Lemon test remains the yardstick that this Court is required to use for measuring the constitutionality of statutes under the Establishment Clause.

In *Lemon*, the Supreme Court made it abundantly clear that the object of the Establishment Clause is to prevent the intrusion of either church or state into the domains of the other. *Lemon*, 403 U.S. at 614, 29 L. Ed. 2d at 756. The Court stated there:

Under our system the choice has been made that government is to be entirely excluded from the area of religious instruction *and churches excluded from the affairs of government.*

*Id.* at 625, 29 L. Ed. 2d at 763 (emphasis added). We must decide whether the Superior Court erred in concluding that there had been such an intrusion of a religious institution into government affairs, given the particular evidence forming the record in this case.

In *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 74 L. Ed. 2d 297 (1982), the Supreme Court considered the excessive entanglement implications of a statute vesting important discretionary governmental powers in a religious institution. Citing the third prong—the entanglement prong—of the Lemon test, the Supreme Court held in that case that the delegation of a State's alcohol licensing power to religious institutions was unconstitutional. In *Larkin*, a Massachusetts statute vested in governing bodies of churches and schools the power effectively to veto applications for liquor licenses for establishments within a 500-foot radius of such churches or schools. Holding the statute unconstitutional, the Supreme Court stated, "The Framers did not set up a system of government in which important, discretionary governmental powers would be delegated to or shared with religious institutions." *Larkin*, 459 U.S. at 127, 74 L. Ed. 2d at 307.

---

2. "The Court today demonstrates the irrelevance of *Lemon* by essentially ignoring it, and the interment of that case may be the one happy byproduct of the Court's otherwise lamentable decision." *Lee*, —— U.S. at ——, 120 L. Ed. 2d at 517 (Scalia, J., dissenting) (citation omitted).

STATE v. PENDLETON

[339 N.C. 379 (1994)]

In *Larkin*, the Supreme Court established a clear rule which this Court is required to follow in cases arising under the Establishment Clause: A state may not delegate an important discretionary governmental power to a religious institution or share such power with a religious institution. All parties to this appeal concede that, pursuant to former Chapter 74A, the State of North Carolina delegated its police power to Campbell University. Therefore, this Court must resolve two questions. First, we must determine whether the police power is an important, discretionary governmental power within the Supreme Court's meaning in *Larkin*. Second, we must decide whether the particular uncontroverted evidence presented in this case supports the Superior Court's conclusion that Campbell University is a religious institution of a type contemplated by the Supreme Court in *Larkin*. If the answer to both these inquiries is yes, then we are required to hold that the statute, as applied on the particular facts of this case, is unconstitutional on the ground that it violates the Establishment Clause.

The first question—whether the police power is an important discretionary governmental power—has already been answered clearly and expressly by the Supreme Court of the United States. In *Foley v. Connelie*, 435 U.S. 291, 55 L. Ed. 2d 287 (1978), the Supreme Court held that "the exercise of police authority calls for a very high degree of judgment and discretion." *Id.* at 298, 55 L. Ed. 2d at 294. The Supreme Court clearly and emphatically said that police "are clothed with authority to exercise an almost infinite variety of discretionary powers" and are vested with "plenary discretionary powers." *Id.* at 297-98, 55 L. Ed. 2d at 293-94. Under this unmistakable mandate of the Supreme Court of the United States in *Foley*, we are required to conclude that the police power is an important discretionary governmental power.

Given that the police power is an important, discretionary government power, we must next address the issue of whether, based on the particular uncontroverted evidence in the present case, the Superior Court erred in concluding that for purposes of analysis under the Establishment Clause, Campbell University is a "religious institution" within the meaning of that phrase as used by the Supreme Court in *Larkin*. The Superior Court's findings of fact are conclusive and binding on this Court if supported by substantial evidence. *State v. Mahaley*, 332 N.C. 583, 423 S.E.2d 58 (1992). In the present case, the Superior Court, based upon uncontroverted evidence including the "CAMPBELL UNIVERSITY BULLETIN 1990-92," made findings, as follows:

## STATE v. PENDLETON

[339 N.C. 379 (1994)]

Campbell University is a Baptist University located in Buies Creek, Harnett County, North Carolina. It was founded in [sic] January 5, 1887.

In 1925, the school's property was deeded to the North Carolina Baptist Convention.

Each student that attends Campbell University's undergraduate school is required to take Religion 101 and any additional religion course.

Religion 101 is a basic Bible course with special emphasis on the birth and development of the Israelite nation, the life and time of Jesus and the emergence and expansion of the early church.

All of the elective religious courses are centered around the Judeo-Christian religion. Campbell University's students are required to adhere to a Code of Ethics which arises out of the institution's statement of purpose [which states]:

> *The basic principles which guide the development of Christian character and govern Christian behavior are to be found in the Scriptures. Moral law is the gift of God and is fully revealed in the teachings of Jesus Christ.*
>
> *The student, by virtue of his enrollment, agrees to abide by the rules and moral precepts which govern the University community. Because of the University's commitment to the lordship of Christ over every area of life, wholehearted obedience to moral law as set forth in the Old and New Testaments and exemplified in the life of Christ applies to every member of the University community, regardless of position.*
>
> *While the Bible does not provide a specific teaching regarding all social practices, its emphasis on general principles is unmistakable, particularly in circumstances where lack of self-restraint would be harmful or offensive to others. Out of these general principles come certain concrete expectations which should be viewed not negatively but as practical guidelines for conduct and for a productive way of life.*
>
> *To uphold at all times and in all places, both on- and off-campus, the University's statement of purpose.*

The Baptist State Convention of North Carolina recommends members of the Board of Trustees to the Baptist State Convention for election.

STATE v. PENDLETON

[339 N.C. 379 (1994)]

The legally designated authority of Campbell University rests in its Board of Trustees. Both in and out of the classroom Campbell University endeavors to present Christian principles to students and to foster their application to daily life.

Campbell University's mission [as expressly declared in the "CAMPBELL UNIVERSITY BULLETIN 1990-92"] is to:

> *Provide students with the option of a Christian world view;*
>
> *Bring the word of God, mind of Christ, and power of the Spirit to bear in developing moral courage, social sensitivity, and ethical responsibility that will inspire a productive and faithful maturation as individuals and as citizens;*
>
> *Transfer from one generation to the next the vast body of knowledge and values accumulated over the ages;*
>
> *Encourage creativity, imagination, and rigor in the use of intellectual skills;*
>
> *Affirm the University's commitment to the belief that truth is never one-dimensional but in wholeness is revelatory, subjective, and transcendent as well as empirical, objective, and rational, and that all truth finds its unity in the mind of Christ;*
>
> *Frame University teaching in the context of a liberal arts education seeking to free persons to live more abundantly and securely in an ever-changing social order;*
>
> *Foster stewardship in nurturing the gifts of the mind and in developing aesthetic sensibilities;*
>
> *Equip students with superior vocational skills, productive insights, and professional integrity;*
>
> *Provide a community of learning that is committed to the pursuit, discovery, and dissemination of knowledge to serve the region as well as national and international communities.*

By agreement between the University Board of Trustees and the governing board of the municipality [of Buies Creek], the University's police may exercise their police power throughout the municipality.

## STATE v. PENDLETON

[339 N.C. 379 (1994)]

By agreement between the University's Board of Trustees and the governing board of the county, the University's police power may extend county-wide.

Campbell University police officers exercise their police power on campus and on the highway adjacent to property owned by Campbell University. There are two main highways that run through Campbell [University]—Highway 421 and [Highway 27].

Captain Ricky Simmonds' immediate supervisor is the Dean of Student Life at Campbell University and the Dean has complete supervisory power over him. The Dean of Student Life is responsible for the administration of the University's disciplinary system, including its Code of Ethics.

The State did not object to the foregoing findings nor did it take exception to them on appeal to this Court. "Where no exceptions have been taken to the findings of fact, such findings are presumed to be supported by competent evidence and are binding on appeal." *Schloss v. Jamison*, 258 N.C. 271, 275, 128 S.E.2d 590, 593 (1962). Therefore, this Court is bound by the above uncontested findings of the Superior Court. *Id.; accord State v. Perry*, 316 N.C. 87, 107, 340 S.E.2d 450, 462 (1986).

The Superior Court also found that "Campbell's religious purpose is inextricably intertwined with its secular activities and it unabashedly attempts to proselytize and indoctrinate its students." This is the only finding we quote that was excepted to by the State. From its findings—including the above uncontested findings and the single contested finding—the Superior Court concluded as a matter of law that for purposes of this case Campbell University is a "religious institution."

The Superior Court's conclusions of law are binding upon us if they are "required as a matter of law by the findings or correct as a matter of law in light of the findings." *State v. Brooks*, 337 N.C. 132, 141, 446 S.E.2d 579, 585 (1994) (citing *Mahaley*, 332 N.C. at 592-93, 423 S.E.2d at 64). In light of the findings of the Superior Court, which were not excepted to by the State and which, therefore, are binding upon this Court, we are compelled to conclude in this case that the Superior Court did not err when it concluded, for purposes of applying the Establishment Clause, that Campbell University is a "religious institution" within the meaning of the Supreme Court of the United States in its decision in *Larkin*.

Given the uncontroverted evidence, it is difficult to see how the Superior Court could have made any different findings or reached any different conclusions than it in fact reached. In its own university bulletin for 1990-92, Campbell University proclaimed with understandable religious enthusiasm that it "is a Baptist university" and that:

The purpose of Campbell University arises out of three basic theological and Biblical presuppositions: learning is appointed and conserved by God as essential to the fulfillment of human destiny; in Christ, all things consist and find ultimate unity; and the Kingdom of God in this world is rooted and grounded in Christian community.

Therefore, Campbell University expressly defined its mission as including: "[providing] students with the option of a Christian world view; [bringing] the word of God, mind of Christ, and power of the Spirit to bear in developing moral courage, social sensitivity, and ethical responsibility that will inspire a productive and faithful maturation as individuals and as citizens. . . ." No one has disputed the fact that Campbell University also carries out laudable purposes relating to the secular education and training of its students. Nevertheless, where a trial court has found that an institution's secular purposes and religious mission are "inextricably intertwined"—as the Superior Court found from uncontroverted and substantial evidence in this case—we have no choice but to treat it as a religious institution for First Amendment purposes. *See Zobrest v. Catalina Foothills School District*, 509 U.S. ——, —— and n.1, 125 L. Ed. 2d 1, 7 and n.1 (1993) (treating a school in which secular education and advancement of religious values or beliefs were inextricably intertwined as a religious institution); *Lemon*, 403 U.S. 602, 29 L. Ed. 2d 745 (treating church-related schools that have the purpose of propagating and promoting a particular religious faith as religious institutions). Consequently, the State's delegation of its police power to Campbell University under former Chapter 74A was—based upon the uncontested findings in this case—a delegation of an important discretionary power to a religious institution. As a result, we are required to hold that former Chapter 74, as applied in this case, resulted in a violation of the Establishment Clause of the First Amendment as construed by the Supreme Court of the United States in *Larkin*. *Larkin*, 459 U.S. at 127, 74 L. Ed. 2d at 307.

We emphasize that our conclusion that the Superior Court did not err in holding that former Chapter 74A was unconstitutional as

applied here to delegate police powers to Campbell University is based upon the unique facts as found by the Superior Court from the particular uncontroverted evidence presented, which findings of facts were not excepted to by the State in this case. We do not consider or decide the status of Campbell University for any other purpose or any other case. We merely hold that, based on the unique record before us, the order of the Superior Court holding the now repealed Chapter 74A to be unconstitutional as applied in this case was without error and must be reinstated. The decision of the Court of Appeals to the contrary must be reversed.

The decision we find ourselves bound to enter based upon binding decisions of the Supreme Court of the United States should not impede the proper enforcement of the criminal laws on the campus of Campbell University. There are methods other than those formerly set out in Chapter 74A for providing for the safety and protection of college campuses—including those college campuses which are deemed by the Supreme Court of the United States, as a matter of constitutional law, to be religious institutions.

For the foregoing reasons, the decision of the Court of Appeals is reversed.

REVERSED.

Justice WHICHARD dissenting.

I agree with the Court of Appeals' conclusion that former Chapter 74A of the General Statutes did not violate the Establishment Clause of the First Amendment to the Constitution of the United States. I believe *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 74 L. Ed. 2d 297 (1982), upon which the majority relies to find Chapter 74A unconstitutional, is distinguishable and does not invalidate the statute.

The Massachusetts statute at issue in *Larkin* conferred upon the governing body of a church or school an absolute veto over applications for liquor licenses when the applicant sought to sell liquor within five hundred feet of the church or school. The United States Supreme Court determined that the statute

> substitutes the unilateral and absolute power of a church for the reasoned decisionmaking of a public legislative body acting on evidence and guided by standards, on issues with significant economic and political implications. The challenged statute . thus

enmeshes churches in the processes of government and creates the danger of "[p]olitical fragmentation and divisiveness on religious lines."

*Larkin,* 459 U.S. at 127, 74 L. Ed. 2d at 307 (quoting *Lemon v. Kurtzman,* 403 U.S. 602, 623, 29 L. Ed. 2d 745, 762 (1971)). It therefore created an excessive entanglement between church and state in violation of the First Amendment.

The majority opinion views *Larkin* as standing for the proposition that no important discretionary power may be delegated to a religious institution. I believe the holding is less expansive, namely, that a delegation of state power to a church violates the First Amendment when the church's exercise of that power fuses religious and governmental functions. Because the nature of both the institution involved and the power delegated differ in this case from those in *Larkin,* I do not believe the *Larkin* precedent requires that we hold Chapter 74A unconstitutional.

The entity that received and exercised state power in *Larkin* was a "formally constituted parish council," an "institution of religious government." *Board of Educ. of Kiryas Joel Village School Dist. v. Grumet,* —— U.S. ——, ——, 129 L. Ed. 2d 546, 557 (1994). Campbell University is neither a church nor an "institution of religious government." It is an institution of higher education affiliated with the North Carolina Baptist Convention. The University's Board of Trustees, though comprised of members of Baptist churches from across the state, governs university affairs, not religious matters. Thus, the Board is not a religious governing body like a parish council.

The Supreme Court has long recognized that colleges and universities closely affiliated with, or even governed by, a religious denomination are not necessarily pervasively sectarian institutions as a result. *See, e.g., Hunt v. McNair,* 413 U.S. 734, 37 L. Ed. 2d 923 (1973); *Tilton v. Richardson,* 403 U.S. 672, 29 L. Ed. 2d 790 (1971). In *Hunt* the Supreme Court concluded that the Baptist College at Charleston was not "an institution in which religion is so pervasive that a substantial portion of its functions are subsumed in the religious mission." *Hunt,* 413 U.S. at 743, 37 L. Ed. 2d at 931. The members of the Board of Trustees of the College were elected by the South Carolina Baptist Convention, which also had the sole power to amend the College's charter and whose approval was required for certain financial transactions. However, neither students nor faculty members had to

meet religious qualifications for admission or appointment, and the College's operations were not "oriented significantly towards sectarian rather than secular education." *Id.* at 744, 37 L. Ed. 2d at 931.

The Supreme Court reached a similar conclusion in *Tilton.* There the Court described the "general pattern" of education at religiously affiliated colleges and universities: "[B]y their very nature, college and postgraduate courses tend to limit the opportunities for sectarian influence by virtue of their own internal disciplines. Many church-related colleges and universities are characterized by a high degree of academic freedom and seek to evoke free and critical responses from their students." *Tilton,* 403 U.S. at 686, 29 L. Ed. 2d at 803. The Court proceeded to note that the four universities receiving aid were "governed by Catholic religious organizations" and populated by predominantly Catholic faculties and student bodies. *Id.* However, all four schools admitted and employed non-Catholics, and none mandated student attendance at religious services. Theology courses, though required, were not limited to consideration of Roman Catholicism and were taught according to the professors' professional standards and "the academic requirements of the subject matter." *Id.* at 686-87, 29 L. Ed. 2d at 803-04. Thus the Court concluded that all four universities were "institutions with admittedly religious functions but whose predominant higher education mission is to provide their students with a secular education." *Id.* at 687, 29 L. Ed. 2d at 804.

Campbell University fits the mold of the church-related universities involved in both *Hunt* and *McNair.* The institution's mission statement, quoted in the trial court's findings of fact and in the majority opinion here, contains both sectarian rhetoric and secular academic aims. Of the nine goals stated, five—a majority—are secular and reveal a commitment to academic rigor and intellectual development. The Supreme Court has declined to rely solely or significantly on an institution's religious rhetoric when determining whether it is pervasively sectarian. *See Hunt,* 413 U.S. at 743, 37 L. Ed. 2d at 931. Similarly, such rhetoric does not render Campbell a religious institution as that term is used in *Larkin.* Though closely affiliated with a religious denomination, Campbell does not subordinate secular education to religious doctrine; it functions neither as a church nor as a religious governing body.

Just as the nature of the institution involved here differs from that involved in *Larkin,* the nature and result of the power delegated also distinguish this case from that one. The statute challenged in

STATE v. PENDLETON

[339 N.C. 379 (1994)]

*Larkin* conferred upon a church the power to veto applications for liquor licenses; the church thus effectively usurped the role of the state. Such abdication by the state created " 'a fusion of governmental and religious functions,' " thus excessively entangling church and state. *Larkin,* 459 U.S. at 126-27, 74 L. Ed. 2d at 307 (quoting *School Dist. of Abington Township, Pa. v. Schempp,* 374 U.S. 203, 222, 10 L. Ed. 2d 844, 858 (1963)).

The church-state relationship created by the state's delegation of its veto power to churches in *Larkin* "presented an example of united civic and religious authority, an establishment rarely found in such straightforward form in modern America." *Grumet,* —— U.S. at ——, 129 L. Ed. 2d at 557. Religious authority completely supplanted civic authority, allowing churches to use civic power for purely religious ends: "[The statute] substitute[d] the unilateral and absolute power of a church for the reasoned decisionmaking of a public legislative body acting on evidence and guided by standards, on issues with significant economic and political implications. The . . . statute thus enmeshe[d] churches in the processes of government . . . ." *Larkin,* 459 U.S. at 127, 74 L. Ed. 2d at 307.

By contrast, neither an abdication of state power to a church nor the resulting fusion of governmental and religious functions occurred here; thus, we are not forced to adopt the result the Supreme Court reached in *Larkin.* At issue here is the delegation of the state's police power. The Attorney General commissioned employees of Campbell University to act as police officers for the school under the authority of former Chapter 74A. Campbell paid the officers' salaries as required by section 74A-4 and remained civilly liable for the acts of the police in the exercise of their authority under the statute. N.C.G.S. § 74A-1 (1989). The officers had the same authority as municipal and county police "to make arrests for both felonies and misdemeanors and to charge for infractions." N.C.G.S. § 74A-2(b).

Additionally, the officers were required to take "the usual oath." N.C.G.S. § 74A-2(a). N.C.G.S. § 11-11 contains the oath for law enforcement officers:

> I, [name], do solemnly swear (or affirm) that I will be alert and vigilant to enforce the criminal laws of this State; that I will not be influenced in any matter on account of personal bias or prejudice; that I will faithfully and impartially execute the duties of my office as a law enforcement officer according to the best of my skill, abilities, and judgment; so help me, God.

N.C.G.S. § 11-11 (1990). The officers also had to take the oath found in Article VI, section 7 of the Constitution of North Carolina, *id.*, which states:

> I, [name], do·solemnly swear (or affirm) that I will support and maintain the Constitution and laws of the United States, and the Constitution and laws of North Carolina not inconsistent therewith, and that I will faithfully discharge the duties of my office as [a law enforcement officer], so help me God.

Thus, members of Campbell's police force pledged to operate within the limits imposed on their law-enforcement power by the federal and state constitutions and laws, and to exercise their power in a neutral manner. The police power exercised by Campbell officers served not as a standardless vehicle for the advancement or protection of religious interests but as a neutral means of protecting the safety of all citizens and residents at and near the University. The existence of constitutional and statutory standards distinguishes this case from *Larkin*, where churches were not required to follow any standards or to explain the exercise of their veto power. Further, the record here does not show that members of Campbell's police force proselytized students, visitors, or faculty or otherwise acted in a religious manner or for a religious purpose in their exercise of the powers delegated to them. The police power conferred was quintessentially secular, neutral and nonideological.

Finally, this delegation of power did not substitute the opinion of a religious body for that of the state and therefore did not fuse religious and governmental functions. "Where 'fusion' is an issue [as in *Larkin*], the difference lies in the distinction between a government's purposeful delegation on the basis of religion and a delegation on principles neutral to religion, to individuals whose religious identities are incidental to their receipt of civic authority." *Grumet*, —— U.S. at ——, 129 L. Ed. 2d at 558. Chapter 74A authorized the delegation of the police power to any company or educational institution on neutral bases, not on the basis of any belief or practice that was religious in nature. The First Amendment does not prohibit church-related institutions from receiving "public benefits that are neutrally available to all." *Roemer v. Board of Public Works of Md.*, 426 U.S. 736, 746, 49 L. Ed. 2d 179, 187 (1976). That Campbell is affiliated with the North Carolina Baptist Convention is wholly incidental to the state's commissioning of the University's police officers to enforce secular statutes of general applicability; in *Larkin*, by contrast, the churches received their civic authority because they were churches.

In *Tilton* the Supreme Court warned that

[t]here are always risks in treating criteria discussed by the Court from time to time as "tests" in any limiting sense of that term. Constitutional adjudication does not lend itself to the absolutes of the physical sciences or mathematics. The standards should rather be viewed as guidelines with which to identify instances in which the objectives of the Religion Clauses have been impaired.

*Tilton*, 403 U.S. at 678, 29 L. Ed. 2d at 798-99. The objectives of the Establishment Clause of the First Amendment were not impaired by the operation of former Chapter 74A because the statute did not create an excessive entanglement between church and state. The standard established by *Larkin* soundly prohibits states from allowing churches to exercise civic authority without appropriate standards and with the goal of protecting religious interests. The delegation here, however, was not to a church or a religious governing body, did not involve the exercise of civic power without standards, and did not have the purpose or effect of protecting or promoting religious interests. It thus did not run afoul of the Establishment Clause of the First Amendment.

I therefore respectfully dissent and vote to affirm the result reached by the Court of Appeals.

Justices MEYER and WEBB join in this dissenting opinion.