STATE OF NORTH CAROLINA v. ANDREW BOYD JORDAN, DEFENDANT

No. COA02-49

(Filed 31 December 2002)

**Constitutional Law— Establishment Clause—religious institution—police power of state—driving while impaired—driving with revoked license**

The trial court did not err by granting defendant's motion to dismiss the charges of driving while impaired and driving with a revoked license on the ground that permitting a Pfeiffer University employee to act as a police officer fostered excessive governmental entanglement with religion and violated the Establishment Clause of the First Amendment to the United States Constitution, because the facts of this case revealed that

the university was a religious institution and therefore N.C.G.S. Chapter 74E is unconstitutional as applied in this case. U.S. Const. amend. I.

Appeal by State of North Carolina from judgment entered 2 August 2001 by Judge Mark Klass in Stanly County Superior Court. Heard in the Court of Appeals 10 October 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Brian L. Blankenship, for the State.*

*Stowers & James, P.A., by Paul M. James, III, for defendant-appellee.*

HUDSON, Judge.

Appellee Andrew Boyd Jordan ("Jordan") was stopped by campus police at Pfeiffer University and charged with driving while impaired and driving with a revoked license. Jordan filed a motion to dismiss the charges, on the ground that permitting a Pfeiffer University employee to act as a police officer fostered excessive governmental entanglement with religion and violated the Establishment Clause of the United States and North Carolina constitutions. The district court granted the motion to dismiss, a decision that the superior court affirmed on appeal. For the reasons set forth in the following opinion, we affirm.

## BACKGROUND

On April 20, 2000, Jordan was driving on the grounds of Pfeiffer University in Misenheimer, North Carolina, when a police officer stopped him. The officer was employed by the Pfeiffer University Police Department, which is an agency certified as a campus police agency pursuant to N.C. Gen. Stat. § 74E. The officer charged Jordan with driving while impaired, in violation of N.C. Gen. Stat. § 20-138.1, and driving while license revoked, in violation of N.C. Gen. Stat. § 20-28.

Jordan filed a motion to dismiss in the district court. Relying on *State v. Pendleton*, 339 N.C. 379, 451 S.E.2d 274 (1994), *cert. denied*, 515 U.S. 1121, 132 L. Ed. 2d 280 (1995), Jordan claimed that permitting a Pfeiffer University police officer to enforce North Carolina law fostered excessive entanglement with religion and violated the Establishment Clause of the First Amendment to the United States Constitution and Article I, Section 19 of the North Carolina

Constitution. The district court agreed and found that the stop of Jordan was an impermissible delegation of state police power to a religious institution and, therefore, constituted excessive governmental entanglement. The court dismissed the action.

The State appealed to the superior court, which held an evidentiary hearing. Jordan introduced evidence to show, inter alia, that Pfeiffer University is affiliated with the Western North Carolina Annual Conference of the United Methodist Church. Pfeiffer University operates a police department, and all members of the department are commissioned as police officers by the Attorney General of North Carolina pursuant to N.C. Gen. Stat. § 74E. The court also heard testimony from Pfeiffer officials who explained both the school's relationship with the Methodist church and the extent of religious-based requirements for students at Pfeiffer.

After hearing the evidence, the superior court affirmed the district court's findings. The State now appeals to this Court.

## ANALYSIS

The State argues that Jordan's rights under the First Amendment to the United States Constitution were not violated when a Pfeiffer University police officer stopped and charged Jordan pursuant to N.C. Gen. Stat. § 74E. Pfeiffer is not a religious institution, the State contends, and, therefore, university officials may wield the State's police power without violating the First Amendment. The State also contends that Article I, Section 19 of the North Carolina Constitution is not implicated here because that provision addresses equal protection and religious discrimination, not excessive entanglement.

N.C. Gen. Stat. § 74E, in pertinent part, reads as follows:

A public or private educational institution or hospital, a State institution, or a corporation engaged in providing on-site police security personnel services for persons or property may apply to the Attorney General to be certified as a company police agency. A company police agency may apply to the Attorney General to commission an individual designated by the agency to act as a company police officer for the agency.

N.C. Gen. Stat. § 74E-2(b). "Company police officers . . . have the same powers as municipal and county police officers to make arrests . . . and to charge for infractions" within a limited territorial jurisdiction. N.C. Gen. Stat. 74E-6(c). The territorial jurisdiction of

**STATE v. JORDAN**

[155 N.C. App. 146 (2002)]

campus police officers includes not only campus property but also "that portion of any public road or highway passing through or immediately adjoining" campus property. N.C. Gen. Stat. § 74E-6(d).

### A.

Ordinarily, when a statute is challenged on constitutional grounds, we first evaluate the law under the state constitution before engaging in federal review. *State v. Pendleton,* 339 N.C. 379, 383, 451 S.E.2d 274, 277 (1994). In *Pendleton,* the defendant argued that § 74E violated both the United States and North Carolina constitutions, but the North Carolina Supreme Court only evaluated the statute under federal law. "[W]here a law has been applied in such a manner as to be a manifest violation of the federal constitution as interpreted by the Supreme Court of the United States, state constitutional review may be unnecessary and dilatory." *Id.* Following the lead of our Supreme Court, we turn directly to Jordan's federal constitutional claims.

### B.

The United States Supreme Court has articulated the following three-pronged test to determine whether a statute violates the Establishment Clause of the First Amendment:

> First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive governmental entanglement with religion.

*Lemon v. Kurtzman,* 403 U.S. 602, 612-13, 29 L. Ed. 2d 745, 755 (1971) (citations and quotation marks omitted). This analysis is known as the *Lemon* test.

Neither of the first two prongs is at issue here. Our analysis of the relevant prong—whether the statute fosters an excessive entanglement with religion—has been eased considerably by our Supreme Court's decision in a similar case, *State v. Pendleton,* 339 N.C. 379, 451 S.E.2d 274 (1994). There, the defendant, an undergraduate student at Campbell University, was arrested for driving while impaired on a public highway near that university's campus in Buies Creek, North Carolina. The arresting police officer was employed by Campbell's campus police force and commissioned pursuant to the predecessor of N.C. Gen. Stat. § 74E. Campbell is closely affiliated with the Baptist State Convention of North Carolina.

STATE v. JORDAN

[155 N.C. App. 146 (2002)]

The defendant challenged the stop and argued that the statute was unconstitutional because it permitted employees of a religious institution to be commissioned and to function as police officers and thereby authorized a religious institution to exercise the police power of the State. Relying on *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 74 L. Ed. 2d 297 (1982), the North Carolina Supreme Court employed a two-part inquiry to determine whether the law was unconstitutional: (1) whether the police power is an important, discretionary governmental power within the Supreme Court's meaning in *Larkin*; and (2) whether the particular uncontroverted evidence in the case before it supported the trial court's conclusion that Campbell University is a religious institution of the type contemplated by the Court in *Larkin. Pendleton*, 339 N.C. at 386, 451 S.E.2d at 278. If the Court answered both questions in the affirmative, it was "required to hold that the statute, as applied on the particular facts of this case, is unconstitutional on the ground that it violates the Establishment Clause." *Id.*

In *Larkin* itself, the United States Supreme Court held that the delegation of a state's alcohol licensing power to religious institutions was unconstitutional. Specifically, a Massachusetts statute gave to the governing bodies of churches and schools the power to effectively veto liquor license applications for establishments within a 500-foot radius of the churches and schools. As the Supreme Court explained, "The Framers did not set up a system of government in which important, discretionary governmental powers would be delegated to or shared with religious institutions." *Larkin*, 459 U.S. at 127, 74 L. Ed. 2d at 307. Thus, a "clear rule" was established that a "state may not delegate an important discretionary governmental power to a religious institution or share such power with a religious institution." *Pendleton*, 339 N.C. at 386, 451 S.E.2d at 278.

Accordingly, the Supreme Court in *Pendleton* first turned to the question of whether the police power is an important discretionary governmental power. *Id.* at 386, 451 S.E.2d at 278. The Court held that it was, on the grounds that the United States Supreme Court had already made that determination. *Id.* at 386, 451 S.E.2d at 278-79 (citing *Foley v. Connelie*, 435 U.S. 291, 297-98, 55 L. Ed. 2d 287, 293-94 (1978), as holding that the "exercise of police authority calls for a very high degree of judgment and discretion" and that police are "clothed with authority to exercise an almost infinite variety of discretionary powers" and are vested with "plenary discretionary powers"). "Under this unmistakable mandate of the Supreme Court of the

United States in *Foley*," the *Pendleton* Court concluded, "we are required to conclude that the police power is an important discretionary governmental power." *Id.* at 386, 451 S.E.2d at 279.

Second, the Court in *Pendleton* was required to determine, based on the specific uncontroverted evidence at hand, whether Campbell University was a "religious institution" within the meaning of that phrase as employed by the United States Supreme Court in *Larkin*. The facts found by the superior court, and relied upon by the Supreme Court, included the following: Each undergraduate student at Campbell is required to take Religion 101, a basic Bible course with special emphasis on the birth and development of the Israelite nation and the life and times of Jesus Christ. Students must take an additional religion course, and all of the elective religion courses offered are centered around the Judeo-Christian religion. Students are required to adhere to a code of ethics, arising out of the university's statement of purpose that states, in pertinent part:

> *The basic principles which guide the development of Christian character and govern Christian behavior are to be found in the Scriptures. Moral law is the gift of God and is fully revealed in the teachings of Jesus Christ.*

> *The student, by virtue of his enrollment, agrees to abide by the rules and moral precepts which govern the University community.*

> *Because of the University's commitment to the lordship of Christ over every area of life, wholehearted obedience to moral law as set forth in the Old and New Testaments and exemplified in the life of Christ applies to every member of the University community, regardless of position.*

The Dean of Student Life at Campbell administers the code of ethics. The same dean also has complete supervisory power over the chief of the campus police force.

Campbell's mission, as set forth in its university bulletin, is to:

> *Provide students with the option of a Christian world view;*

> *Bring the word of God, mind of Christ, and power of the Spirit to bear in developing moral courage, social sensitivity, and ethical responsibility that will inspire a productive and faithful maturation as individuals and as citizens; . . .*

*Affirm the University's commitment to the belief that truth is never one-dimensional but in wholeness is revelatory, subjective, and transcendent as well as empirical, objective, and rational, and that all truth finds its unity in the mind of Christ . . . .*

Moreover, the Baptist State Convention of North Carolina recommends members of the Campbell Board of Trustees to the Baptist State Convention for election.

After reviewing the facts found by the superior court, the Supreme Court agreed that Campbell, indeed, was a religious institution. "[W]here a trial court has found that an institution's secular purposes and religious mission are 'inextricably intertwined'—as the Superior Court found from uncontroverted and substantial evidence in this case—we have no choice but to treat it as a religious institution for First Amendment purposes." *Id.* at 390, 451 S.E.2d at 281. Because the State neither objected to the trial court's findings nor took exception to them on appeal, the Court in *Pendleton* "presumed [them] to be supported by competent evidence and binding on appeal." *Pendleton*, 339 N.C. at 389, 451 S.E.2d at 280 (citation and quotation marks omitted). The Court also considered itself bound by the trial court's conclusions of law because they were "required as a matter of law by the findings or correct as a matter of law in light of the findings." *Id.* (citation and quotation marks omitted). Thus, the Supreme Court was "compelled" to conclude that the superior court did not err when it found that Campbell University was a religious institution, as defined by the Supreme Court in *Larkin*, and that, as a consequence, N.C. Gen. Stat. § 74E was unconstitutional as applied. *Id.*

C.

Turning to the case at hand, we must determine whether the trial court properly determined that Pfeiffer is a religious institution in accordance with the United States Supreme Court's decision in *Larkin*. If it is, N.C. Gen. Stat. § 74E, as applied to the university, is unconstitutional. *Pendleton*, 339 N.C. at 386, 451 S.E.2d at 278.

Here, the district court found that the stop of Jordan by the Pfeiffer University police officer was unconstitutional because (1) the authority granted to Pfeiffer University by Chapter 74E is an impermissible delegation of the State's police powers to a religious institution and (2) the exercise of those powers creates excessive

governmental entanglement with that religious institution. The superior court then affirmed the district court's order.

Unlike the court in *Pendleton*, however, the superior court did not articulate any findings of fact to support its conclusion that Pfeiffer is a religious institution. Absent a request by a party, the trial court is not required to make findings of fact to support a ruling on a motion to dismiss. *Corbin Russwin, Inc. v. Alexander's Hardware, Inc.*, 147 N.C. App. 722, 723, 556 S.E.2d 592, 594-95 (2001). When the trial court does not make findings of fact, this Court, on appeal, presumes that there were sufficient facts to support the judgment. *Id.*, 556 S.E.2d at 595. If these presumed factual findings are supported by competent evidence, they are conclusive on appeal. *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 672, 541 S.E.2d 733, 737 (2001).

Here, the State did not request that the superior court make findings of fact. Accordingly, the dispositive issue before us is the sufficiency of the evidence to support a determination that Pfeiffer is a religious institution.

At the hearing on the motion to dismiss in superior court, Pfeiffer's president described Pfeiffer as affiliated and sponsored by the Western Carolina Conference of the United Methodist Church. He also described Pfeiffer's purpose and mission as being a "model church related institution preparing servant leaders for life long learning" and agreed that "Pfeiffer University strives to encourage Christian values within the context of its educational goals."

The university's Board of Trustees, its governing body, must have at least six of its 44 members from the Women's Missionary Society of the Western Carolina Conference of the United Methodist Church. The director of the Council of the Western Carolina Conference of the United Methodist Church is required to be a member of the Board of Trustees. Upon election to the Board, the names of newly elected trustees are submitted to the Western Carolina Conference of the United Methodist Church for approval, although the Conference does not have the power to block the election of a board member.

In addition, Pfeiffer closes its administrative offices every Wednesday morning so that employees may attend chapel services during regular working hours. Undergraduate students may obtain cultural credits toward graduation by attending those same services, although they can earn the required credits in other, secular ways. Students must take at least two courses in religion, Christian educa-

tion, or philosophy, at least one of which must be a course from the religion department. The dean of student development and the university president at Pfeiffer exercise supervisory authority over the Pfeiffer campus police force.

After careful review, we hold that the record reveals sufficient evidence to support the superior court's determination that Pfeiffer is a religious institution. As such, the provisions of N.C. Gen. Stat. § 74E, as applied here, are unconstitutional. We emphasize, however, that our conclusion is narrowly drawn and is based only upon the specific evidence presented here. We do not decide the status of Pfeiffer University for any other purpose or any other case. We merely hold, based on the record before us, that the order of the Superior Court holding Chapter 74E to be unconstitutional as applied in this case was proper.

## CONCLUSION

For the reasons set forth above, we affirm the judgment of the superior court.

Affirmed.

Judges TIMMONS-GOODSON and CAMPBELL concur.