STATE OF NORTH CAROLINA v. JULIE ANNE YENCER

No. 365PA10

(Filed 10 November 2011)

**Constitutional Law— Establishment Clause—Campus Police Act—no excessive entanglement—motion to suppress properly denied**

The trial court did not err in a driving while impaired case by denying defendant's motion to suppress. Applying the test enumerated in *Lemon v. Kurtzman*, 403 U.S. 602, the Supreme Court concluded that the Campus Police Act's provision of secular, neutral, and nonideological police protection for the benefit of the students, faculty, and staff of Davidson College, as applied to defendant's conviction for driving while impaired, did not offend the Establishment Clause of the First Amendment to the United States Constitution. Defendant failed to demonstrate that her arrest and conviction for driving while impaired were influenced by any consideration other than secular enforcement of a criminal statute, N.C.G.S. § 20-138.1.

On discretionary review pursuant to N.C.G.S. § 7A-31 and on appeal of right of a constitutional question pursuant to N.C.G.S. § 7A-30(1) to review a unanimous decision of the Court of Appeals, —— N.C. App. ——, 696 S.E.2d 875 (2010), reversing an amended order denying defendant's motion to suppress entered on 29 May 2007 by Judge W. Robert Bell and a judgment entered on 1 August 2008 by Judge Jesse B. Caldwell, III, both in Superior Court, Mecklenburg County. On 7 October 2010, the Supreme Court allowed defendant's conditional petition for discretionary review as to an additional issue. Heard in the Supreme Court 15 March 2011.

*Roy Cooper, Attorney General, by Amy Kunstling Irene and Tamara Zmuda, Assistant Attorneys General, for the State-appellant.*

*Knox, Brotherton, Knox & Godfrey, by Allen C. Brotherton, for defendant-appellee.*

*Goldsmith, Goldsmith & Dews, P.A., by C. Frank Goldsmith, Jr., for North Carolina Advocates for Justice, amicus curiae.*

*Poyner Spruill LLP, by Thomas R. West and Pamela A. Scott, for N.C. Association of Campus Law Enforcement Administrators;*

*Edmond W. Caldwell, Jr., General Counsel, for N.C. Sheriffs' Association, Inc.; and Kochanek Law Group, by Colleen Kochanek, for North Carolina Association of Chiefs of Police, amici curiae.*

*Poyner Spruill LLP, by Thomas R. West and Pamela A. Scott, for North Carolina Independent Colleges and Universities, Inc., amicus curiae.*

*Richard L. Hattendorf, General Counsel, and Bailey & Dixon, LLP, by Jeffrey P. Gray, for State Lodge, Fraternal Order of Police, amicus curiae.*

*McGuireWoods, LLP, by Bradley R. Kutrow, for Trustees of Davidson College, amicus curiae.*

MARTIN, Justice.

The North Carolina General Assembly enacted the Campus Police Act to provide police protection at "institutions of higher education" and to ensure "this protection is not denied to students, faculty, and staff at private, nonprofit institutions of higher education originally established by or affiliated with religious denominations." N.C.G.S. § 74G-2 (2009). Under the authority of the Act, an officer of the Davidson College Campus Police arrested defendant for driving while impaired. We hold that the Campus Police Act, as applied to defendant, does not offend the Establishment Clause of the First Amendment to the United States Constitution.

On 5 January 2006, Davidson College Campus Police Officer Wesley L. Wilson observed defendant's vehicle traveling at a high rate of speed and crossing the center lines of two streets near the Davidson College campus. Officer Wilson stopped defendant's vehicle and, with defendant's consent, administered two breath alcohol tests. Officer Wilson arrested defendant for driving while impaired and reckless driving.

Defendant filed a pretrial motion to suppress, contending that the exercise of police power by an officer of the Davidson College Campus Police violated the North Carolina and United States Constitutions because Davidson College is a "religious institution" for Establishment Clause purposes. The trial court issued a written order denying defendant's motion on 21 May 2007. Defendant pled guilty on 31 July 2008 to driving while impaired but reserved her right to appeal the trial court's denial of the motion to suppress.

On appeal, the Court of Appeals reversed the trial court's denial of defendant's motion to suppress, holding that two state court decisions, *State v. Pendleton*, 339 N.C. 379, 451 S.E.2d 274 (1994), *cert. denied*, 515 U.S. 1121, 115 S. Ct. 2276 (1995), and *State v. Jordan*, 155 N.C. App. 146, 574 S.E.2d 166 (2002), *appeal dismissed and disc. rev. denied*, 356 N.C. 687, 578 S.E.2d 321 (2003), compelled the conclusion that "Davidson College is a religious institution for the purposes of the Establishment Clause." *State v. Yencer*, —— N.C. App. ——, ——, 696 S.E.2d 875, 879 (2010). The court held that the Campus Police Act granted an unconstitutional delegation of discretionary power to a religious institution. *Id.* at ——, 696 S.E.2d at 879. The court observed, however, that both *Pendleton* and *Jordan* were decided before passage of the Campus Police Act, "one of the stated purposes of which is to 'assure, to the extent consistent with the State and federal constitutions, that [police] protection is not denied to students, faculty, and staff at private, nonprofit institutions of higher education originally established by or affiliated with religious denominations.' " *Id.* at —— n.10, 696 S.E.2d at 880 n.10 (alteration in original) (quoting N.C.G.S. § 74G-2). The Court of Appeals concluded its opinion by urging this Court to review its decision. *Id.* at ——, 696 S.E.2d at 880. On 7 October 2010, we retained the State's notice of appeal, allowed the State's petition for discretionary review, and allowed defendant's conditional petition for discretionary review.

At the outset, we observe that "[t]he standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber*, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011) (citation omitted). We review conclusions of law de novo. *Id.* at 168, 712 S.E.2d at 878 (citations omitted).

It is well established that "religious institutions need not be quarantined from public benefits that are neutrally available to all." *Roemer v. Bd. of Pub. Works*, 426 U.S. 736, 746, 96 S. Ct. 2337, 2344 (1976) (Blackmun, J.) (plurality opinion). "The purposes of the First Amendment guarantees relating to religion were twofold: to foreclose state interference with the practice of religious faiths, and to foreclose the establishment of a state religion familiar in other 18th-century systems." *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 122, 103 S. Ct. 505, 510 (1982). When, as here, the facts evince no preference for one religion over another, we apply the test enumerated in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S. Ct. 2105 (1971), to resolve an

STATE v. YENCER

[365 N.C. 292 (2011)]

Establishment Clause challenge. *See Hernandez v. Comm'n*, 490 U.S. 680, 695, 109 S. Ct. 2136, 2146 (1989) ("If no . . . facial [denominational] preference exists, we proceed to apply the customary three-pronged Establishment Clause inquiry derived from *Lemon v. Kurtzman*." (citations omitted)).

In *Lemon* the United States Supreme Court established the seminal three-pronged inquiry: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.' " 403 U.S. at 612-13, 91 S. Ct. at 2111 (internal citations omitted) (quoting *Walz v. Tax Comm'n*, 397 U.S. 664, 674, 90 S. Ct. 1409, 1414 (1970)). In recent years the Court has increasingly treated excessive entanglement "as an aspect of the inquiry into a statute's effect." *Agostini v. Felton*, 521 U.S. 203, 233, 117 S. Ct. 1997, 2015 (1997); *see also Zelman v. Simmons-Harris*, 536 U.S. 639, 648-49 (majority), 668-69 (O'Connor, J., concurring), 122 S. Ct. 2460, 2465 (majority), 2476 (O'Connor, J., concurring) (2002). Accordingly, we apply *Lemon* and its progeny to address the Establishment Clause challenge raised by defendant in the instant case.

The Supreme Court has indicated that the fact-centered analysis necessary to resolve Establishment Clause challenges "lacks the comfort of categorical absolutes." *McCreary Cnty., Ky. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 859 n.10, 125 S. Ct. 2722, 2733 n.10 (2005). "It is perhaps unfortunate, but nonetheless inevitable, that the broad language of many clauses within the Bill of Rights must be translated into adjudicatory principles that realize their full meaning only after their application to a series of concrete cases." *Cnty. of Allegheny v. Am. Civil Liberties Union, Greater Pittsburgh Chapter*, 492 U.S. 573, 606, 109 S. Ct. 3086, 3108 (1989). "[A]nalysis in this area must begin with a consideration of the cumulative criteria developed over many years and applying to a wide range of governmental action challenged as violative of the Establishment Clause." *Tilton v. Richardson*, 403 U.S. 672, 677-78, 91 S. Ct. 2091, 2095 (1971) (plurality opinion).

Defendant does not dispute that the Campus Police Act has a "secular legislative purpose." *Lemon*, 403 U.S. at 612, 91 S. Ct. at 2111. The legislature explicitly stated its purpose in enacting the Campus Police Act: "[T]o protect the safety and welfare of students, faculty, and staff in institutions of higher education by fostering integrity, proficiency, and competence among campus police agen-

cies and campus police officers." N.C.G.S. § 74G-2(a). We need not pursue this inquiry further because defendant in no way suggests that this provision is "anything other than a good-faith statement of purpose." *Hunt v. McNair*, 413 U.S. 734, 741, 93 S. Ct. 2868, 2873 (1973). Therefore, it is undisputed that the Campus Police Act has a secular legislative purpose as required by *Lemon*.

Turning to the disputed aspects of the *Lemon* test, we must consider whether the principal effect of the statute advances or inhibits religion and whether the statute fosters an excessive government entanglement with religion. *See, e.g., Agostini*, 521 U.S. at 232-34, 117 S. Ct. at 2014-15. The Supreme Court has provided guidance for applying the *Lemon* test when the government has conferred aid and delegated authority, both of which necessitate discussion here. *See Bd. of Educ. v. Grumet*, 512 U.S. 687, 702-06, 114 S. Ct. 2481, 2491-92 (1994) (addressing an alleged Establishment Clause violation by drawing from cases involving delegation of authority, monetary aid, and other governmental benefits).

In cases of government aid to organizations that are not churches, the Court has considered "the character of the institutions benefited (*e.g.*, whether the religious institutions [are] 'predominantly religious') and the nature of the aid that the State provided (*e.g.*, whether it was neutral and nonideological)."[1] *Id.* at 232, 117 S. Ct. at 2015 (citations omitted); *see also Hunt*, 413 U.S. at 743-44, 93 S. Ct. at 2874-75; *Everson v. Bd. of Educ.*, 330 U.S. 1, 17-18, 67 S. Ct. 504, 512-13 (1947). Although "the proposition that the Establishment Clause prohibits any program which in some manner aids an institution with a religious affiliation has consistently been rejected," *Hunt*, 413 U.S. at 742, 93 S. Ct. at 2874 (citations omitted), courts must necessarily conduct a factual inquiry to ensure that the governmental benefit does not flow directly "to the religious as opposed to the secular activities of the [institution]," *id.* at 744, 93 S. Ct. at 2874. If an institution is so "pervasively sectarian," *id.* at 743, 93 S. Ct. at 2874, that governmental benefits cannot be directed primarily toward neutral, nonreligious purposes, then the benefit likely would advance

---

1. More recently, there has been some question as to the continued applicability of the pervasively sectarian analysis. *See Mitchell v. Helms*, 530 U.S. 793, 826, 827, 829, 120 S. Ct. 2530, 2550-52 (2000) (plurality opinion) ("[T]here was a period when [the pervasively sectarian nature of a benefit recipient] mattered . . . . But that period . . . is thankfully long past. . . . [T]he religious nature of a recipient should not matter to the constitutional analysis, so long as the recipient adequately furthers the government's secular purpose. . . . [N]othing in the Establishment Clause requires the exclusion of pervasively sectarian schools from otherwise permissible aid programs, and other doctrines of this Court bar it.").

religion in a manner inconsistent with *Lemon, see id.* at 743-44, 93 S. Ct. at 2874-75.

The Supreme Court has also considered whether the aid "result[s] in governmental indoctrination; define[s] its recipients by reference to religion; or create[s] an excessive entanglement." *Agostini,* 521 U.S. at 234, 117 S. Ct. at 2016. When assessing a delegation of governmental power to a church, the Court has considered whether the delegation advances religion and whether the delegation is limited by an " 'effective means of guaranteeing' that the delegated power 'will be used exclusively for secular, neutral, and nonideological purposes.' " *Larkin,* 459 U.S. at 125, 103 S. Ct. at 511 (quoting *Comm. for Pub. Educ. & Religious Liberty v. Nyquist,* 413 U.S. 756, 780, 93 S. Ct. 2955, 2969 (1973)). In such circumstances, the Court has found excessive entanglement when the statute "substitutes the unilateral and absolute power of a church for the reasoned decision-making of a public legislative body acting on evidence and guided by standards, on issues with significant economic and political implications." *Id.* at 127, 103 S. Ct. at 512.

Davidson College is not a church but a private liberal arts college. Students are admitted regardless of their religious beliefs and they are not required to attend religious services. Students represent a wide diversity of faith traditions. To graduate from Davidson College with a Bachelor of Science degree, a student must satisfactorily complete thirty-two courses. Of those thirty-two courses, only one must be in religion. Staff and faculty are not required to have a religious affiliation or to attend religious services; they merely must agree that they will work in harmony with the College's statement of purpose. The Presbyterian Church of the United States of America (PC-USA) has no role either in the hiring or firing of staff or faculty, or in the student admissions process. The PC-USA neither owns the land on which Davidson College is situated, nor has any role in setting the curriculum or in making management and policy decisions. In short, the PC-USA does not run or control the College.

Davidson College was established in 1837 by the Presbyterians of North Carolina and is voluntarily affiliated with the PC-USA. Davidson's historical relationship with the PC-USA is memorialized in its statement of purpose.[2] According to this statement of purpose:

2. The statement of purpose, in relevant part, provides as follows:

   Since its founding, the ties that bind the college to its Presbyterian heritage, including the historic understanding of Christian faith called The Reformed

"The primary purpose of Davidson College is to assist students in developing humane instincts and disciplined and creative minds for lives of leadership and service. . . . The loyalty of the college thus extends beyond the Christian community to the whole of humanity and necessarily includes openness to and respect for the world's various religious traditions." The bylaws require that at least eighty percent of Davidson's board of trustees be active members of some Christian church. Twenty-four of the forty-four elected trustees must be members of PC-USA churches, and all must agree to "honor the traditions that have shaped Davidson as a place where faith and reason work together in mutual respect for service to God and humanity." Davidson's bylaws also elaborate that the president should be a Christian who is a member of a PC-USA church.

The trial court considered this evidence and concluded that Davidson's primary purpose is secular education. We affirm the trial court's determination that Davidson College is not a church and that its primary purpose is not religious in nature. Davidson College's secular, educational mission predominates. While a reading of Davidson's statement of purpose shows that the College is church affiliated, the statement also shows that the College is not a "predominantly religious" institution. *Agostini*, 521 U.S. at 232, 117 S. Ct. at 2015 (citations omitted).

We now pause to examine the Campus Police Act. *See* N.C.G.S. §§ 74G-1 to -13 (2009).[3] Before the enactment of the Campus Police

---

Tradition, have remained close and strong. The college is committed to continuing this vital relationship.

The primary purpose of Davidson College is to assist students in developing humane instincts and disciplined and creative minds for lives of leadership and service. . . .

The Christian tradition to which Davidson remains committed recognizes God as the source of all truth, and believes that Jesus Christ is the revelation of that God, a God bound by no church or creed. The loyalty of the college thus extends beyond the Christian community to the whole of humanity and necessarily includes openness to and respect for the world's various religious traditions.

3. Three statutes authorizing certified police agencies will be referenced in this opinion: Chapters 74A, 74E, and 74G. The police agency in *Pendleton* was authorized under the Chapter 74A Company Police Act. In *Pendleton* this Court found Chapter 74A unconstitutional as applied. 339 N.C. at 390, 451 S.E.2d at 281. In 1992 the General Assembly repealed Chapter 74A and enacted Chapter 74E. Under Chapter 74E, all police agencies certified under Chapter 74A were converted to certifications under Chapter 74E. Act of July 25, 1992, ch. 1043, sec. 9, 1991 N.C. Sess. Laws (Reg. Sess. 1992) 1150, 1158. In 2005 the General Assembly enacted Chapter 74G to provide police

Act, the Davidson College Campus Police were regulated under Chapter 74E. *See* N.C.G.S. §§ 74E-1 to -13 (2009). The session law enacting the Campus Police Act "automatically convert[ed]" all campus police agency certifications and officer commissions issued under Chapter 74E to authorizations under the Campus Police Act, unless the board of trustees of the educational institution requested in writing to remain under Chapter 74E. Act of July 18, 2005, ch. 231, sec. 12, 2005 N.C. Sess. Laws 531, 541. Because Davidson's board of trustees did not elect to continue certification under Chapter 74E, Officer Wilson was commissioned as a police officer under the Campus Police Act at the time of defendant's arrest.

The Campus Police Act imposes more stringent limitations than did the statute this Court considered in *Pendleton*, 339 N.C. 379, 451 S.E.2d 274. The Court in *Pendleton* was tasked with addressing whether the former statute, Chapter 74A, was unconstitutional as applied to an arrest by campus police at Campbell University. We are faced with a very different statute here, designed to address concerns about the delegation of governmental power. In addition to the former statute's requirement for officers to "take and subscribe the usual oath," N.C.G.S. § 74A-2(a) (1989) (repealed 1992), the Campus Police Act imposes further limitations to ensure neutral, uniform enforcement of the law by campus police agencies. The Act requires that campus police officers maintain the same minimum standards that are required for state police officers generally. N.C.G.S. § 74G-8. The Act also imposes constraints and checks on campus police agencies. Specifically, the Act authorizes the Attorney General to (1) "establish minimum education, experience, and training standards"; (2) set and enforce certification requirements; (3) require reports from campus police officers and agencies; (4) inspect records maintained by campus police agencies; (5) conduct investigations to ensure that campus police agencies and officers are complying with the Act; and (6) "deny, suspend, or revoke" campus police agency certifications and campus police officer commissions for failure to comply with the Act. *Id.* § 74G-4. The Attorney General is the legal custodian of all records of the Campus Police Program, including personnel files for campus police officers. *Id.* § 74G-5. When campus police officers exercise the power of arrest, they must "apply the standards established by the law of this State and the United States."

protection in the specific context of institutions of higher education. N.C.G.S. § 74G-2. At the time of defendant's arrest, the Davidson College Campus Police agency was certified under Chapter 74G.

*Id.* § 74G-6(b). In other words, campus police officers may enforce only the law, not campus policies or religious rules. Further, any arrests made by campus police officers are "reviewable by the General Court of Justice and the federal courts." *Id.* § 74G-2(b)(9). Accordingly, the Campus Police Act provides substantially more protections to ensure neutrality and guard against excessive church-state entanglement than did the statute at issue in *Pendleton.*

Cognizant of Davidson's institutional characteristics and of the underlying differences between Chapter 74G and the former statute, Chapter 74A, we examine the primary effect and excessive entanglement aspects of the *Lemon* test in the context of this case. First, the "nature of the aid that the State provided" in certifying the Davidson College Campus Police is secular. *Agostini*, 521 U.S. at 232, 117 S. Ct. at 2015 (citations omitted). This benefit offers the College a state-certified police agency to enforce federal and state laws, not religious rules. Defendant has not argued that the delegation of police power to the Davidson Campus Police is anything but "secular, neutral, [and] nonideological." *Lemon*, 403 U.S. at 616, 91 S. Ct. at 2113 ("Our decisions from *Everson* to *Allen* have permitted the States to provide church-related schools with secular, neutral, or nonideological services, facilities, or materials."). Rather, like those at other colleges and universities, the students, faculty, and staff at Davidson are simply receiving the secular benefit of police protection. Moreover, defendant has not argued that the statute "define[s] its recipients by reference to religion." *Agostini*, 521 U.S. at 234, 117 S. Ct. at 2016. The benefits of the Campus Police Act are available both to religiously affiliated schools and to nonreligiously affiliated schools. Further, defendant has failed to demonstrate that the operation of the Act has resulted in "governmental indoctrination" of religion. *Id.* Specifically, defendant makes no contention that the Davidson Campus Police attempt to proselytize or enforce any private or religious rules, or that her arrest was religiously motivated. Similarly, defendant makes no claims that the campus police infringe on students' or town residents' religious liberties. The campus police merely enforce secular law—nothing more, nothing less.

Next, the delegation of governmental power here is limited by an " 'effective means of guaranteeing' that the delegated power 'will be used exclusively for secular, neutral, and nonideological purposes.' " *Larkin*, 459 U.S. at 125, 103 S. Ct. at 511 (quoting *Comm. for Pub. Educ.*, 413 U.S. at 780, 93 S. Ct. at 2969). As outlined above, the Campus Police Act establishes numerous clear and comprehensive

standards that constrain the authority of campus police officers. These officers are permitted only to enforce secular law, not campus policies or religious rules. *See* N.C.G.S. § 74G-6(b). Further, the Attorney General may revoke a campus police agency's certification or a campus officer's commission for failure to comply with the requirements of the Act. N.C.G.S. § 74G-4. Having seen no evidence to the contrary, we may assume that the Davidson College Campus Police act in good faith in their exercise of the statutory power. *See Larkin*, 459 U.S. at 125, 103 S. Ct. at 511 (citing *Lemon*, 403 U.S. at 618-19, 91 S. Ct. at 2114); *see also Agostini*, 521 U.S. at 223-24, 117 S. Ct. at 2010-11; *Roemer*, 426 U.S. at 760, 96 S. Ct. at 2351; *Tilton*, 403 U.S. at 679-80, 91 S. Ct. at 2096.

Finally, we consider whether the statutory delegation results in "an 'excessive' entanglement that advances or inhibits religion." *Agostini*, 521 U.S. at 233, 117 S. Ct. at 2015. Having reviewed Davidson's institutional characteristics—its secular purpose, faculty, students, curriculum, and management—it is clear that religion is not "so pervasive that a substantial portion of its functions are subsumed in the religious mission." *Hunt*, 413 U.S. at 743, 93 S. Ct. at 2874; *see also Agostini*, 521 U.S. at 232, 117 S. Ct. at 2015. Because campus police officers' enforcement of the secular law is statutorily separated from the school's religious affiliation, there is little danger that the governmental benefit will accrue to religious rather than secular activities. *See Hunt*, 413 U.S. at 743-44, 93 S. Ct. at 2874-75; *see also Lemon*, 403 U.S. at 618, 91 S. Ct. at 2114 (declining to assume "bad faith or any conscious design to evade the limitations imposed by the statute and the First Amendment" in the absence of evidence otherwise).

While Davidson has historical ties to the PC-USA, the College pursues the predominant purpose of secular education. The potential influence of the PC-USA over the College is minimal, as the Church does not run or control the College and has no role in management or policy decisions. *See Hunt*, 413 U.S. at 742-45, 93 S. Ct. at 2874-75 (finding that a Baptist-affiliated college was not "pervasively sectarian" even though the school's trustees were elected by the South Carolina Baptist Convention and the Convention's approval was required for certain financial transactions). The religious beliefs held by members of the Davidson College board of trustees, president, and dean of students do not demonstrate—or even suggest—that the PC-USA controls their roles in directing the school's policies and practices. Although the dean of students serves in a supervisory

capacity over the campus chief of police, the chief and departmental police officers exercise their authority consistent with "standards established by the law of this State and the United States." N.C.G.S. § 74G-6(b). Because defendant has failed to argue here or present any evidence in the trial court to the contrary, we decline to assume that the trustees, the dean of students, and the chief perform their duties in any manner other than good faith compliance with the Campus Police Act and the First Amendment. *See Lemon*, 403 U.S. at 618, 91 S. Ct. at 2114. Accordingly, the statutory provision of police protection for the students, faculty, and staff at Davidson, an educational institution with the primary purpose of secular education, does not result in excessive entanglement between church and state.

The United States Supreme Court's decision in *Hunt v. McNair* is instructive in the present case. While *Hunt* involved the grant of aid to secure funding for educational buildings at a religiously affiliated institution of higher education, the Baptist College at Charleston, the parallels are significant. *See* 413 U.S. at 741-42, 93 S. Ct. at 2873-74. As is the case here, the government benefit in *Hunt* had a secular purpose and was available to both religiously and nonreligiously affiliated institutions. *Id.* Also analogous to the instant case, the Supreme Court declined to find that the educational institution's purpose was predominantly religious, despite its observations that the members of the College's board of trustees were elected exclusively by the South Carolina Baptist Convention, certain financial transactions required approval by the South Carolina Baptist Convention, and the College's charter could be amended only by the South Carolina Baptist Convention. *Id.* at 743-44, 93 S. Ct. at 2874. Important to this conclusion was the absence of religious qualifications for faculty appointments or student admissions. *Id.* (noting that nearly sixty percent of the College's students were Baptist). The Court therefore concluded that the primary purpose of the College was secular education and that the grant of aid would benefit the secular, rather than the religious, activities of the College. *Id.* at 744-45, 93 S. Ct. at 2874-75. The Court also held that there was not excessive entanglement between church and state because the College was not "an instrument of religious indoctrination," *id.* at 746, 93 S. Ct. at 2876, and the government would not become deeply involved in the day-to-day decisionmaking of the College under the statutory scheme, *id.* at 747-49, 93 S. Ct. at 2876-77; *see id.* at 746, 93 S. Ct. at 2875 ("[T]he degree of entanglement arising from inspection of facilities as to use varies in large measure with the extent to which religion permeates the institution.").

As in *Hunt*, the secular educational purpose predominates at Davidson, and the governmental benefit neutrally advances the purpose of police protection for the campus community. Because the campus police agency benefits Davidson's secular rather than religious activities, this case does not give rise to excessive entanglement or have the primary effect of advancing or inhibiting religion. *See id.* at 742-45, 93 S. Ct. at 2874-75. Notably, the PC-USA exercises significantly less control over Davidson College than the South Carolina Baptist Convention exercised over the Baptist College at Charleston. The State's supervisory role over the police agency does not interfere with the day-to-day decisionmaking of Davidson, while it ensures that the officers' power is used to further Davidson's secular educational purpose. *See id.* at 745-49, 93 S. Ct. at 2875-77.

Defendant contends that the Campus Police Act is an unconstitutional delegation of governmental authority to a religious institution. *See Larkin*, 459 U.S. 116, 103 S. Ct. 505. In *Larkin*, a state statute gave churches absolute veto power over liquor licensing, resulting in excessive entanglement between church and state. *Id.* at 117, 130, 103 S. Ct. at 507, 514. The Supreme Court determined that the statute unconstitutionally "substitute[d] the unilateral and absolute power of a church for the reasoned decisionmaking of a public legislative body acting on evidence and guided by standards, on issues with significant economic and political implications." *Id.* at 127, 103 S. Ct. at 512. In other words, the statutory delegation of power to the churches was "standardless, calling for no reasons, findings, or reasoned conclusions." *Id.* at 125, 103 S. Ct. at 511. For that reason, "[t]hat power may therefore [have] be[en] used by churches to promote goals beyond insulating the church from undesirable neighbors; it could [have] be[en] employed for explicitly religious goals, for example, favoring liquor licenses for members of that congregation or adherents of that faith." *Id.* at 125, 103 S. Ct. at 511. Because Davidson College is not "predominantly religious"—let alone a religious authority—the delegation of power here bears little resemblance to that in *Larkin*. These cases are further differentiated in that the statute here does not delegate absolute police power to Davidson College. Rather, the statute certifies Davidson College's campus police as a campus police agency under the secular law of North Carolina. *See* N.C.G.S. § 74G-2. The statute grants only limited supervisory powers to Davidson College, while ultimate control of the police power—which the individual officers alone exercise—remains in the hands of the State. *See id.* § 74G-4. Thus, this is not a case in which a statute delegates unbridled discretionary governmental powers to a religious

**DOBSON v. SUBSTITUTE TR. SERVS., INC.**

[365 N.C. 304 (2011)]

organization. The delegation of limited power to campus police officers here "does not result in an 'excessive' entanglement that advances or inhibits religion." *Agostini*, 521 U.S. at 233, 117 S. Ct. at 2015; *Larkin*, 459 U.S. at 127, 103 S. Ct. at 512.

The Campus Police Act's provision of secular, neutral, and non-ideological police protection for the benefit of the students, faculty, and staff of Davidson College, as applied to defendant's conviction for driving while impaired, does not offend the Establishment Clause of the First Amendment to the United States Constitution. Defendant has failed to demonstrate that her arrest and conviction for driving while impaired were influenced by any consideration other than secular enforcement of a criminal statute, N.C.G.S. § 20-138.1. Accordingly, we reverse the decision of the Court of Appeals.

REVERSED.